UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRANDON EWING, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:10CV857 CDP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

Movant Brandon Ewing brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Ewing was sentenced to a term of 240 months imprisonment following his guilty plea to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base. Criminal Case No. 4:08CR405 CDP. He did not appeal.

As grounds for § 2255 relief, Ewing alleges that the government committed prosecutorial misconduct, that he received ineffective assistance of counsel, and that his sentence violates the Eighth Amendment, Due Process, and society's evolvinged standards of justice. All of these allegations are conclusively refuted by the record, however, so I will deny the motion without a hearing.

**Background**

Between January of 2005 and July 2, 2008, several individuals, including Ewing and Artwon Robinsion, conspired to distribute heroin, MDMA (Ecstasy), cocaine and cocaine base, and marijuana in St. Louis, Missouri. Robinson received cocaine and cocaine base from various sources outside of St. Louis, which he would later resell to Ewing. Agents from the Drug Enforcement Agency began investigating these sales in 2006, intercepting a phone call from Robinson to Ewing on August 7, 2007. During this call, the two men agreed to meet in thirty minutes at the intersection of Itaska and Tennessee, where Robinson would sell Ewing one to two ounces of crack cocaine at the price of $900 an ounce. Agents set up surveillance at the intersection, and soon observed Robinson and other suspected drug dealers. Robinson called Ewing, who stated that he only had $660 to spend, and Robinson assured Ewing that Robinson would "take care of him." Ewing agreed to the sale, and arrived soon afterward. Agents observed Ewing and Robinson meet at the intersection. After their meeting, Ewing left in his car at a high rate of speed to return to his residence. Robinson called Ewing to make sure Ewing arrived home without being stopped by police, and Ewing acknowledged that he had.

Robinson and Ewing completed similar crack sales on August 10, 2007 and August 11, 2007. On August 10, Ewing informed Robinson in a phone call that he had $1200 to spend on crack, and the two agreed to meet at a residence at the

intersection of Castleman and Klemm. Surveillance revealed Ewing entering the residence and exiting after four minutes. Soon afterward, Robinson called Ewing and told him he would sell Ewing one-and-a-half ounces of crack (42 grams) for $1000. Ewing agreed and sent "his girl" to pick up the crack. On August 11, agents intercepted another telephone conversation between Robinson and Ewing in which Ewing told Robinson that he had $700 to purchase an additional ounce (28 grams) of crack.

Based on these investigations, Ewing was indicted on July 2, 2008 along with sixteen co-defendants for one count of conspiracy to possess with intent to distribute in excess of fifty grams of cocaine base. On August 5, 2008, Ewing was arrested and made an initial appearance before the Honorable Audrey G. Fleissig. Defense counsel was appointed to represent Ewing, and he entered a plea of not guilty on August 8. After his counsel moved successfully for a bond reduction, Ewing executed bond and was released from custody on September 2, 2008. In November of 2008, Ewing waived pretrial motions through counsel and indicated in January of 2009 that he would enter a plea of guilty to the indictment.

However, Ewing's bond was revoked in January of 2009 after a Pretrial Service Violation Report indicated that Ewing had violated several conditions of his release. In particular, Ewing had tested positive for opiates, and was "wanted" by the St. Louis Metropolitan Police Department for suspicion of first-degree

robbery and first-degree assault. A police report indicated that Ewing was suspected of robbing and assaulting three victims with a firearm in a residence on Pestalozzi Street on December 17, 2009. St. Louis police officers were called to the scene after a witness reported hearing loud yelling and screaming, followed by five gunshots, and had also observed two suspects run from the residence's porch, enter a vehicle, and flee the scene. Police interviewed all three victims. The first victim indicated he was in bed with his girlfriend, the second victim, when one suspect opened the door to his bedroom, entered armed with a firearm, and demanded money. Victim #1 arose from bed and tried to push the suspect out of the room, but the suspect shot Victim #1 five times. After shooting Victim #1, the suspect ordered Victim #2 out of bed and told her to give him money. She gave him her cell phone and debit card, and the suspect ran from the residence.

The third victim was Victim #1's roommate and reported to police that he had met both suspects at a bar in East St. Louis, Illinois before the robbery and assault. The three men had played pool together, and Victim #3 told the suspects he wanted to purchase marijuana. The suspects agreed, and accompanied Victim #3 back to his residence. Once inside Victim #3's bedroom, the suspects threw Victim #3 face-down on his bed, held him there with a hard object pressed against his back, and struck him on the right side of his head with a firearm. Victim #3 believed suspect "B" hit him. After striking Victim #3, suspect "B" removed

Victim #3's keys and identification card from his pants pocket and searched through Victim #3's dresser drawers, removing his cell phone. Soon after noticing that the suspects had left his room, Victim #3 heard several gunshots.

Once he knew that the suspects had fled the residence, Victim #3 ran to Victim #1's bedroom, where he observed Victim #1 lying on the floor, bleeding from five gunshot wounds to his left bicep, left ear, left upper chest, right upper chest, and right ankle. Victim #1 was treated at St. Louis University Hospital and survived. Police suspected that Ewing was suspect "B," who had possessed the firearm, hit Victim #3 on the side of his head with the firearm, and shot Victim #1 five times. Testing of the firearm left at the scene revealed Ewing's fingerprints. In an interview with police on January 7, 2009, however, Ewing adamantly denied any involvement in the December 17 robbery and assault.

Because of Ewing's suspected involvement in this incident and his other violations, a bond revocation hearing was scheduled on January 20, 2009. Ewing waived his right to the hearing, however, and was committed to the custody of the United States Marshal on January 22. After learning about Ewing's suspected involvement in the December 17 assault and robbery, the government believed Ewing was a serious danger to the community and decided to file a notice of enhanced sentencing pursuant to 21 U.S.C. § 851(a)(1) based on Ewing's prior felony drug conviction. Accordingly, on January 29, 2009, the government filed a

Criminal Information, alleging Ewing's October 23, 2003 felony drug conviction in Missouri state court and seeking to increase Ewing's mandatory minimum sentence from ten years to twenty. The government was aware that Ewing actually had two prior felony drug convictions – making him potentially subject to a mandatory life sentence if the government had filed an information alleging both of his prior convictions – but exercised its discretion not to file an information based on his second conviction.

After the government's information was filed, Ewing expressed his interest through counsel to assist the government and the DEA in its investigations. He met with a DEA agent and an Assistant United States Attorney on February 17, 2009, but did not provide much information. After the meeting, Ewing's defense counsel contacted the government once more to provide information, but none of the information yielded results of any value.

On February 24, 2009, Ewing appeared before me and, pursuant to a plea agreement, pleaded guilty to one count of conspiracy to possess with intent to distribute in excess of fifty grams of crack cocaine. In the plea agreement, Ewing admitted (1) that he had committed the offense as charged in the indictment, and (2) that he had previously been convicted for a felony drug conviction as described in the government's Criminal Information. In exchange, the government agreed not to bring any further prosecution for Ewing's involvement

in the drug conspiracy, and not to file another Information seeking an enhancement because of Ewing's second prior felony drug conviction. Additionally, Ewing agreed to waive all rights to appeal all sentencing issues and not to file any post-conviction motions or motions under 28 U.S.C.§ 2255, except for claims of ineffective assistance of counsel and prosecutorial misconduct. Ewing also indicated that, given the crime to which he was pleading guilty and his admitted prior felony drug conviction, he fully understood that the mandatory minium sentence he faced was twenty years imprisonment. Finally, Ewing agreed that he was satisfied with his counsel's representation; that counsel had completely explored all areas that Ewing requested him to explore relative to the government's case and any defense; and that no one had coerced him or threatened him into pleading guilty.

I reviewed Ewing's plea agreement, including his admission of guilt to the crime and to having a prior felony conviction, as well has his waiver of appeal, with Ewing on the record during his plea colloquy. Ewing was placed under oath, and, in response to my questioning, he assured me that he was satisfied with his legal representation. Based on Ewing's statements to me at his colloquy, I accepted his guilty plea.

A presentence investigation report (PSR) was then prepared. The PSR determined that the Total Offense Level was twenty-seven, and that Ewing had a

Criminal History Category of II, resulting in an advisory sentencing guidelines range of 87 to 108 months. However, because the statutory minimum penalty was twenty years, the guideline range became 240 months. After hearing arguments at the sentencing hearing, I determined the guideline range was 240 months. I considered all of the factors set out in 18 U.S.C. § 3553(a), and sentenced Ewing to the mandatory minimum sentence of 240 months imprisonment on May 12, 2009. Ewing did not appeal.

Ewing now files a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his motion, he asserts the following grounds for relief:

1. The Assistant United States Attorney committed prosecutorial misconduct by filing the Criminal Information seeking to enhance the mandatory minimum.

2. Counsel was ineffective for failing to challenge the Information and the sentence.

3. The sentence imposed violates the Eighth Amendment, Due Process, and society's evolved standards of justice.

## Discussion

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal

quotation marks and citation omitted). However, no hearing is required when the claim is inadequate on its face, or if the record affirmatively refutes the assertions upon which it is based. *Id.* Here, because Ewing's claims are affirmatively refuted by the record and files before me, I conclude that no hearing is required.

## Prosecutorial Misconduct

Ewing claims that the Assistant United States Attorney committed prosecutorial misconduct by filing the Criminal Information against him seeking to enhance the mandatory minimum sentence from ten to twenty years imprisonment. In particular, he contends that the circumstances in which the AUSA filed the information – including that several of his co-defendants received lower sentences despite their greater degree of guilt, and that he had never previously served time in prison – support the inference that the AUSA filed the information vindictively. He also asserts the AUSA filed the information in retaliation for his unwillingness to cooperate with the government. Both of these claims are refuted by the record.

The decision whether to file a Criminal Information seeking to enhance a defendant's mandatory minimum sentence is within an AUSA's sole discretion. *See* 21 U.S.C. § 851(a); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws.") (internal quotation marks and citations omitted); *Bordenkicher v. Hayes*, 478 U.S. 357, 364 (1978) (as a general

- 9 -

rule, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Although United States Attorneys are subject to constitutional constraints, *United States v. Batchelder*, 442 U.S. 114, 125 (1979), a "presumption of regularity" supports their decisions, and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (internal quotation marks and citation omitted); *cf. also Wade v. United States*, 504 U.S. 181, 186 (1992) (district court need not hold a hearing to determine whether AUSA had improper motive in failing to file for a downward departure, when defendant presented no evidence, aside from his own "generalized allegations," that AUSA's failure to seek downward departure was improperly motivated).

Here, Ewing submits no evidence, aside from his own conclusory allegations, that the AUSA had an improper motive in seeking to enhance his sentence. Indeed, rather than supporting Ewing's allegations, the evidence in the record supports the AUSA's decision. Ewing had two prior felony drug convictions, making him potentially eligible for a mandatory sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Ewing stipulated to those prior convictions in his plea agreement, and also indicated that he understood that his

past drug conviction from 2002 enhanced his mandatory minimum from ten years to twenty years imprisonment. In that same agreement, the government agreed not to seek an enhancement for both of Ewing's prior drug convictions, which could have resulted in a mandatory life sentence. Additionally, Ewing does not dispute that he was wanted by St. Louis police for being a suspect in a violent assault and robbery against three victims while on release. Nor does he dispute that the police's suspicions were motivated in part by the discovery of Ewing's fingerprints on the firearm left at the scene of the assault and robbery.

This evidence affirmatively refutes Ewing's conclusory allegations of improper motive. In the face of Ewing's suspected involvement in violent felonies while on release, the AUSA's decision to seek an enhanced sentence because of her fear for the community at large was well within her discretion. Additionally, the AUSA could have chosen to file an information seeking a mandatory sentence of life imprisonment because of Ewing's two prior felony drug convictions, but chose not to do so. Rather than suggesting vindictiveness or other improper motive, the record indicates that the AUSA balanced her concern for the community with the individual facts of Ewing's case.

Ewing's other attempts to allege improper motive also fail. Ewing attempts to bolster his claims by comparing his sentence with the sentences some of his co-defendants received, claiming that he received a longer sentence although he was

less culpable than these defendants and had not previously served time in prison, while some of them had served time. This argument is misplaced. As the AUSA points out, none of the defendants to which Ewing refers were suspected of committing violent felonies while on release, so the AUSA did not have the same concerns about the public's safety with these defendants as with Ewing. Finally, Ewing's claim that the AUSA filed the information in retaliation for his refusal to cooperate with the government's investigation is simply incorrect. As he admits in his reply brief, Ewing himself volunteered to provide information to investigators. His information proved to be of little use, however, and so the AUSA did not seek a downward departure based on his assistance. Thus, the record affirmatively refutes Ewing's claim of prosecutorial misconduct, and that claim fail.

### Ineffective Assistance of Counsel

Ewing's ineffective assistance of counsel claim is similar to his prosecutorial misconduct claim – counsel was ineffective by failing to challenge the AUSA's Criminal Information, the mandatory minimum sentence, or the AUSA's alleged bias. Just as with his prosecutorial misconduct claim, however, the record affirmatively refutes Ewing's ineffective assistance claim.

The Sixth Amendment establishes the right to the effective assistance of counsel in a criminal case. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order for a convicted defendant to prove that his counsel was ineffective, he

must first show that counsel's performance was deficient, and fell below an objective standard of reasonableness. *Id.* at 687-88. The showing of deficiency requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, a defendant must show prejudice, which is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). To show ineffective assistance of counsel in the context of a guilty plea, a movant must show that but for counsel's errors, the defendant would not have pleaded guilty but would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

In this case, there is nothing in the record, aside from Ewing's conclusory allegations, to suggest that defense counsel did anything less than zealously represent Ewing, or that any challenge to the information or the twenty-year mandatory minimum sentence would have been successful had counsel attempted a challenge. Instead, the record reveals that counsel served the government with an extensive discovery request and successfully moved to have Ewing's bond reduced. Counsel also contacted the government on Ewing's behalf when Ewing desired to provide information and facilitated a meeting between Ewing and the government. After the meeting, counsel once again contacted the government to

relay more information from Ewing. Finally, he negotiated a favorable plea bargain with the government in which the government agreed not to seek a mandatory life sentence despite Ewing's two prior felony drug convictions.

Moreover, Ewing stated in his plea agreement that he was satisfied counsel's representation; that counsel had reviewed the case, the government's evidence, and all possible defenses with him; and that counsel had completely and satisfactorily explored all areas that Ewing had asked him to explore. He testified under oath to these facts at his plea colloquy before me as well. Although guilty pleas taken in open court under oath are not invulnerable to collateral attacks in post-conviction proceedings, a defendant's representations during the colloquy "carry a strong presumption of verity and pose a formidable barrier to any subsequent collateral proceedings." *Nguyen v. Untied States*, 114 F.3d 699, 703 (8th Cir. 1997) (internal quotation marks and citation omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Aside from his unsupported accusations, Ewing presents nothing in his § 2255 motion to refute his own prior testimony that he was satisfied with counsel and counsel's performance.

Finally, there is no evidence that Ewing would not have pleaded guilty had counsel challenged the information and mandatory minimum sentence, or that any such challenge would have been successful if attempted. The record reveals that

Ewing pleaded guilty after the government filed its information, and that Ewing pleaded guilty even though he was aware that this plea, when combined with the government's enhancement, would result in a twenty-year mandatory minimum. Additionally, Ewing stated in his plea agreement and again before me while under oath that he entered his plea voluntarily and without coercion from any person because he was guilty of the crime charged. But even if counsel had challenged the information or twenty-year mandatory minimum, any such challenge would have failed. It is undisputed that Ewing had two prior felony drug convictions, and, as discussed above, there is absolutely no evidence that the AUSA had an improper motive in seeking the enhancement based on one of those convictions. As a matter of law, counsel cannot be ineffective for failing to raise an meritless argument. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). Accordingly, Ewing's ineffective assistance of counsel claim fails.

## Remaining Claims

Ewing also moves to vacate or set aside his sentence because, he contends, it violates the Eighth Amendment, Due Process, and society's evolving standards of decency. However, in Ewing's plea agreement, he agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." A defendant may knowingly waive his right to bring § 2255 claims in a plea agreement, and the

waiver will be enforced unless the plea agreement was not entered into knowingly and voluntarily. *See DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2003). Ewing does not allege that his guilty plea was unknowing or voluntary, nor does he contend that enforcement of his voluntary waiver of rights would amount to a miscarriage of justice. *See United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003) (knowing and voluntary waiver would not be enforced if to do so would result in a miscarriage of justice). Ewing's statements under oath to me at the plea colloquy establish that the plea agreement was entered into knowingly and voluntarily, and Ewing has come forward with no evidence to suggest that enforcement of his voluntary waiver of rights would result in a miscarriage of justice. I will therefore enforce the valid waiver in his plea agreement and deny these grounds.

## Certificate of Appealability

Because Ewing has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appeal ability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flinger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

Given the overwhelming evidence of his guilt, and his two prior felony drug convictions, Ewing was faced with either proceeding to trial and the possibility of

a mandatory life sentence, or agreeing to plead guilty and serving a mandatory minimum of twenty years imprisonment. He chose to plead guilty and was sentenced to twenty years; he may regret that decision now, but there is no evidence before me that the sentence must be vacated, set aside, or corrected.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Brandon Ewing to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appeal ability, as Ewing has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

 

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February, 2011.